Good morning, Your Honors. May it please the Court, Michael Bresnahan representing Emmett Miguel. It's our position set forth in our brief that, and let me stop myself, I'd like to reserve three or four minutes possible. It's our position the Court must reverse if it finds insufficient evidence in either trial, and that's a point of contention here, whether under U.S. v. Bodie, this Court can take a look at the evidence, the insufficiency claim as to the first trial. U.S. v. Bodie did precede Richardson, but Richardson aside for a moment, it looks as though Bodie is the law of the circuit, again, unless Richardson or some other case abrogated Bodie. Bodie filed a section 2255 motion after Burks. The defendant argued there was insufficient evidence in the first two trials. Citing Burks, this Court reversed the conviction in the second trial on double jeopardy grounds, finding evidence, the evidence insufficient in the first trial. Counsel, can you clarify for me what your position is, or how you believe that the district court abused its discretion in ruling, in limiting the scope of the defense examination of Zachary Justin with regards to the polygraph? Could you explain that? I don't have that much detail in my brief, and I don't because I didn't think that that really went to the issue that's before the Court today. I thought the broader holding in Bodie really got to the heart of what we're trying to get to today, and that is whether this Court can do a look back to the first of two trials after the second trial has concluded. Okay. That question is very important to me. So you're saying, your observation, your position that there was a 403 error excluding the polygraph-related statements is not a point that you're pressing? You're pressing just your insufficiency point as to trial one and trial two? Yes. Today, that's a word. Well, when you say today, that could be conclusive of an issue. Right. I'm simply arguing that under the broader holding through this Court, the Court of Appeals in Bodie, the Court of Appeals was allowed to look back to the first, for the sufficiency of evidence in the first trial. Okay. Well, so you're pressing the sufficiency points. The question is, are you surrendering also the secondary argument as to it was reversible error for the district court to confine the nature of cross-examination of the hostile witness, Justin? Is that something you haven't come prepared to discuss? Yes. I haven't come prepared to discuss. I guess I'm not in a position to concede anything having not focused on that in preparation. Well, briefly on the sufficiency, if you don't mind, I mean, you've read Richardson. Yes. And you've read Justice Stevens' dissent. Yes. And Justice Stevens' dissent seems to say that the majority has foreclosed the review of the first trial, yes or no? It seems to be pointing in that direction. Okay. Yes, the dissent. Why does it matter to you? Because in both cases, the victim testified and accused your client. And in both cases, Detective Rivers testified and said that your client had said he didn't have any sexual relationship with her, and yet then it turns out he fathered A.H. So you've got a victim statement and you've got a false exculpatory. In either trial, why wouldn't that be sufficient to support the verdict? Well, now we're focusing on the sufficiency of the evidence. Well, I'm a little misunderstanding where you're going with the entire argument, but I thought that's what you were saying that you are prepared to discuss, sufficiency as to either the first trial or the second trial. Oh, yes. And my question is, the incriminating points that would, to me, justify a verdict were identical in both trials. So it doesn't really matter. I'm skeptical that after Richardson, the argument can be made. Well, our position with respect to the impact of Richardson on Bodie is that Richardson held that the defendant is not entitled to appellate interlocutory review because Jeopardy had not terminated after the first trial. And our position is, under Bodie, this Court may look back because the second trial concluded and Jeopardy has terminated at that point and there can be a look back. I don't think Richardson foreclosed that outcome. In other words, I don't think it abrogated Bodie in any way. In fact, there was some language in Richardson. I guess what I was asking is just what do you, what does it even, how does it assist you? To look back at the first trials? If the same major points of incriminating testimony came in in both, why would we come to a different outcome? Well, they are two trials. The evidence was not identical in the trials. But I describe what I say as, I see as the most salient incriminating points that would justify a verdict. Do you dispute either of those pieces of evidence having come in at both trials? Well, maybe I should answer it this way. One of the big differences between the first and second trial was the admission of the statement by Mr. Justin where he... Yes, we're very familiar, but that's the issue that you seem to be capitulating slightly. In the first trial, you were able to cross-examine and it was a devastating and closing argument that he had equivocated about her credibility. But then in the second trial, that was, I mean, according to how I had read the briefs, that was not permitted. Correct. Correct. So that's one of the important differences. I think the first trial was probably weaker than the second trial because of the admission of that statement. The person closest to Ms. Hugo had some serious doubts about her veracity, even asked for a polygraph test. I think the jury probably had some real issues with that based upon statements made by the government in its motion in limine before the second trial. And I thought that that differentiates the two trials. On the other hand, in the second trial, we had the testimony of the government's expert, I think it's Ms. Hale or Hile, which sort of cut both ways. She wasn't in the first trial, but... So what you're saying is the big difference between the first and the second is you were able to impeach somebody in the first, you weren't in the second. That sounds less like a sufficiency argument to me than why is it that you weren't in the second trial. Did you preserve a cross-confrontation clause argument to that exclusion, or is it a straight 403 argument? Well, I didn't try the case, but looking at the record, I thought that, I thought it was both, although... Preserve. Preserve. That's my question. Right. Right. Did you allege, Your Honor, you have to allow us to cross-examine based on the polygraph-related statements? Because if you don't, it violates my client's confrontation clause rights. Did you preserve that? The trial attorney did not cite chapter and verse of the constitutional provision. You're correct. But he did argue he had the right, in so many words, he had the right to cross-examine what had become an adverse witness at that point in time. And I believe the constitutional provision, the relevant constitutional provision is out there. As I stand here, I'm taking the position that you don't have to cite chapter and verse. All you have to say is that I have a right to cross-examine this person. Implicit in that objection could be two things. It could be a rule of evidence-based objection. It could be a constitutionally-based objection. Anyone looking at that, though, even though the magic words were not uttered, would see immediately that there's a confrontation clause issue. Member, you remember pretty well the direct examination of Justin, the cross by the government, and the redirect? Fairly well, yeah. So on redirect, the defense was able to elicit from him, not reference to the word polygraph, but it was able to elicit that maybe his doubts were specific to, I quote, relationship gone bad. Is that correct or not? Yes, but I think the polygraph comment was so powerful, it probably influenced the hung jury in the first trial. It should have been allowed in the second trial. There's nothing magical about the word polygraph. But that's the 403, the Rule 403 issue that Judge Higginson asked about earlier and, you know, that is of some interest to us. So the question is, have you forfeited that argument because it's nowhere in your opening brief and today you're not prepared to discuss it? I may have misunderstood the question. No, we haven't. Well, it may be plain error review at this point in time. Actually, I don't think it would be plain error review because he did, in fact, object. He objected orally before the second trial to the motion in limine and he gave his reasons. He renewed that objection just before. My question is, have you forfeited the argument because it is not in your opening brief and it is not? The question is whether we can consider this issue at all today, given your position, not what happened at the trial. Is it that you're not focusing it on today or is it you're forfeiting it? That's the question. Well, we're not forfeiting the issue and I guess I'm confused. Why isn't it forfeited, given that it was not addressed at all in your opening brief? Could you help me understand precisely what issue that you feel I'm forfeiting? Because I believe we did address this issue. You're talking about the polygraph issue, the word polygraph in the second trial. The merits of the Rule 403 issue. Right. I thought we did address it. We pointed out the objection, the failure to grant the patent. I didn't mention the word 403 because we certainly brought the constitutional argument. You're picking your issues to argue to us as to why there's reversible error. At the outset, maybe I wasn't clear, you focused on your sufficiency arguments and the Richardson argument. That's what led me to ask you, what about the motion in Lemonet and the exclusion of polygraph-related statements? And there are different ways to approach that. One is the confrontation clause. That wasn't preserved below, but it was in your principal brief. Of course, 403 and hearsay came up and those were preserved below, but then they weren't in your principal brief. The government did raise the issue and then you responded in your reply brief. So, we need you to tell us what arguments you think are the ones you are urging us to reverse on and what ones you aren't. Well, our position is that the statement, the polygraph statement was not hearsay. The cross-examination was to a prior inconsistent statement. It was impeachment to address Mr. Justin's attempt to walk back. His many stories statement, heard many stories, he tried to walk that back from Ms. Hugo. So you're trying to preserve that, is that what you're saying, even though you didn't argue that in your brief? Yes, of course. Of course, I would want to preserve that. On what basis should we consider that at this point? And not consider it waived? Well, again, I thought I did preserve it in the brief and obviously a panel feels otherwise, but I did raise the issue that I did allude to the rules of evidence, I believe. I don't recall citing Rule 403, but I did allude to the rules of evidence and I also alluded to the constitution. And that's the district court's basis for its ruling was a Schaeffer-type view that any reference to polygraphs, which are unreliable, would confuse a jury. So I guess, do you have any Ninth Circuit law that reverses as to improper 403 decisions generally? Can you give us your best case where we have reversed a district court's determination that something's too confusing for a jury? No, I can't cite a case directly to that point, but I got the impression the judge was simply improperly focused on the word polygraph without giving it context. Maybe so, but you are asking us to reverse and you don't have a Ninth Circuit case. Reversing a district court's 403 determination ever, none comes to mind. None comes to mind, no. Shall I proceed? So it's our view that the court can look back at both trials for insufficiency. I realize that on review, the rules of review all favor the government and the jury's verdict, so it's a steep hill to climb. It's our position that Ms. Hugo's accounts of the alleged incident were uncorroborated, inconsistent, objectively implausible, and that no rational juror could have found guilt under the circumstances. It's our position that a rational juror would have found Ms. Hugo's accounts of the incident were internally inconsistent in important respects in both trials, and I laid that out in detail in the brief. Rational juror would have found some of her allegations objectively implausible. I laid those out as well. There was DNA evidence, but our position is that the DNA evidence at most proved some sort of sexual liaison or contact. It certainly did not prove rape. It's our position that a rational juror would have expected Ms. Hugo to tell somebody what happened, including her cousin and brother, minutes after it happened, after this allegedly traumatic incident happened. Security at the dance, other family members, the police, her prenatal medical providers, her cousin, months afterwards when discussing Miguel. She didn't want to report the incident. She was angry at Mr. Justin for making her call the police. These are all powerful reasons for a rational juror to reject this whole idea that there was a dance and a sexual assault occurred at the dance. And I did give some reasons for the Court to consider that I thought jurors, a rational juror, wouldn't naturally consider why she would tell this tale, because of, in light of her relationship with Mr. Justin. Counsel, you wanted to save some time. Do you want to save the rest of your time? You can keep on going. I'm just saying that you had requested that. Thank you. Let me just jump, let me just spend a minute on the sentencing. The problem I had, or we have, with the, one of the problems was the judge's lack of any explanation of why she imposed the supervised release, the sexual conditions of supervised release. And the I think she had to do more than simply jump to that based on a recommendation of the probation department because of the act itself, the alleged act itself. Placing my client on lifetime supervised release with sexual terms meant several of them having to do with my client's ability to, or authority to circulate among younger children without, I guess, contact the probation officer. I think that deserved an explanation from the judge because that's a pretty big deal when somebody gets out. It affects their job. It may affect their social contacts. It's going to affect their life in a big way. And there just was no explanation whatsoever for that. And I thought that was something that the court should certainly consider. I will save a minute. Thank you. Very well. Good morning. Good morning, Your Honors. May it please the Court. Alana Kennedy for the United States. I wanted to start by addressing the Confrontation Clause issues that the panel raised earlier with my counterpart. It's our view that the standard of review here is for plain error. Miguel did not make a specific Confrontation Clause objection before the district court. And the case law, and specifically the Anekwu case, require that such an objection needs to be timely and specific. And neither of those things occurred here. So we would ask the panel to apply plain error review. In evaluating the restrictions on cross-examination, which in this case, Mr. Justin was not the government's witness. He was not subject to cross-examination during the second trial. He was called by the defense. But generally, for those types of restrictions that a district court might place in the context of cross-examination, the court looks to the relevance of the excluded evidence, the interest justifying the exclusion, and whether there is still sufficient information for the jury to consider the credibility of the witness testifying. He was the government's witness in the first trial. That's correct, Your Honor. And then you file a motion in limine to prevent any 607 use of him as a hostile witness, at least if it were to reach into the polygraph-related statements. Is that a fair statement? It was the government's motion in limine requesting limited ability to 607 cross-examination, a witness they might call, correct? I don't know that we cited Rule 607, but that is the essence of the government's motion in limine during the second trial. And the reason why the government filed that motion in limine was because the defense attorney had posed a question to the victim during the first trial where he asked her about Mr. Justin's statement, quote, do you guys do polygraph tests, unquote. And that was something that the victim was not party to. It was an invisible hearsay statement that should not have been asked. And as a result of him asking that statement of the victim, the government was forced to put Mr. Justin on the stand during the first trial to explain the context of why that statement was asked. But you're not persisting with the argument that that would be hearsay. A question to a police officer, do you do polygraphs? There's nothing, no truth being asserted. There wasn't even a test done. How would that be hearsay? During the second trial, Your Honor, that was exactly why the defense counsel wanted to put Mr. Justin on the stand. That's demonstrated in how he proceeded during the first trial and his arguments during the final pretrial conference regarding the motion in limine and at sidebar. So he wanted to put the statement. But he wanted to, he handled the first trial, and it led to a hung jury, and it was a substantial portion of his closing argument. The government's witness had been devastatingly crossed. So of course he wants that same evidence in. It's the government's position that the district court properly excluded that evidence. Yes. And are you saying it's because it was hearsay? Or are you saying because it was a 403 exclusion? Because it was improper impeachment, it was hearsay, and it was subject to Rule 403. Okay. And my question is, how could it possibly be hearsay? Because it was offered. What's being offered for the truth? The line of cross-examination, or in this case, the direct examination, was the victim's credibility. And so that statement was offered for the truth of the matter of the victim's credibility. So it was a roundabout way to get to improper impeachment. Okay. I'm lost by that answer. I thought the district court said, this is confusing. Anything related to polygraph is confusing. Because clearly the district court allowed in, and the government didn't object to the statements about, well, I heard it on TV and the other stories. That would be even more hearsay under this logic. That's correct. Okay, go ahead. I'm sorry, Your Honor, I didn't mean to cut you off. The court is correct that the court precluded the polygraph statement specifically for Rule 403 considerations. Regarding the inconsistent stories and a relationship gone bad statements, the government did not seek to exclude those statements, and the district court obviously allowed those. And there was ample examination of Zachary Justin regarding those statements during the second trial. But I mean, obviously, what happens here, correct me if I'm wrong, is Justin asks to speak to the officers separately. And then Justin says to them, do you guys do polygraphs? Says it twice. And then Justin adds, you should probably do one. But then when he's in the second trial, unlike in the first, he's saying that the victim here has been consistent throughout. Her accusation of rape against Miguel is consistent, and they want to get in. But you said to the police officers, you should probably do one. That seems like devastating, appropriate, prior inconsistent statement testimony. Your Honor, I respectfully disagree. During the first trial, Zachary Justin explained extensively what he was asking about in the context of that conversation with the officer. And he explained that he was not talking about his view of the victim's credibility. And in fact, he testified that in his view, she is a truthful person. When he was asking those questions of the officer, he was talking about sexual assault investigations generally, and his experience with having friends and family members on the Gila River Indian community who had gone through certain things similar to this, and that it was a big issue in the community. And he was concerned about what these types of investigations might look like. So the first trial testimony actually explains the reasoning behind all of that. But then the jury hangs. They didn't interpret it the way you've just described it. Well, Your Honor, that's not in the record as to why. That was your motion in limine. You described that in the motion in limine as the reason. You said this jury was confused by that whole exchange, and then the government chooses not to call Justin. I believe the government statement in the motion in limine was something to the jury admitted to spending some time on the polygraph statement. There were other things discussed that are not in the record before the court, but certainly that statement that the jury communicated to counsel after the first trial that the word polygraph was discussed was enough for the government to file the motion in limine. And had the government known that Mr. Hall, who was the defense attorney before the district court, would attempt to improperly ask the victim about that statement during the first trial, we would have obviously filed a motion in limine there as well. We find that the district court abused its discretion in excluding the polygraph, and the government has the burden to show harmlessness. How do you show harmlessness? If it is abuse of discretion, Your Honor, the error was clearly harmless because defense counsel was able to extensively cross-examine both Mr. Justin and the victim about credibility. That was obviously a focal point of the defense case. But not on that topic though, right? Not on the word polygraph specifically, but on inconsistent stories and relationship gone bad. So the district court judge's allowance of all of those broader topics really preserved the ability of the defense theory of their case and the ability to delve into the credibility issues that were a heart of their defense. Unless... No, I do have more questions. Because here it looks to me, disagree, that the government not only excludes what it was that caused the jury to have doubt in the first case, devastating impeachment of the man who reported the crime and then who vouched for it, but then when the government, in cross-examination of Justin, the government, because it's attained the block on the polygraph-related statements, the government then elicits from him that it's just everything he said was about the TV and what he saw on the TV. It had nothing to do with her. So it's not just that evidence was excluded, but it's that the government then sort of relies on exactly the theory that could only be contradicted if you were to allow cross. I respectfully disagree, Your Honor. I think that all of that information the government elicited on cross went to explanations about why Zachary Justin made comments about different stories and relationship gone bad. And so all of that information that was elicited was his explanation and context for that wider conversation. And when Zachary Justin was interviewed by... Or when he was present for the end of the interview of the victim and then made those statements to law enforcement, it was kind of towards the end of a recording and there was a lot of wind sounds in the background. And so there just isn't really additional context there for what other information might have been discussed or what other words would have been said. So his explanation on the stand about why... What he meant by inconsistent statements and hearing different stories was extremely important. Can you spend a second just... Again, confusingly today, your friend on the other side may have been conceding some things, not argued certain things. I guess I want to get your perspective. Were things waived? Were arguments waived at least with regards to the polygraph and or not preserved for appeal purposes on this whole notion of Zachary Justin and the polygraph? I think with respect to the panel's concern that the Rule 403 issue was waived, we would agree that... But you addressed the 403 issue in your response. So even if it was not raised in the opening brief, the government discussed the issue in its response. So then shouldn't we just assume that it's not forfeited? In other words, why are you prejudiced? I'm sorry, would you mind repeating that? Why are you prejudiced if you raised it in your brief? You argued it. Well, Your Honor, because defense counsel... Or excuse me, petitioner argued that there was a confrontation clause violation and that the statements should have been admitted. And even in considering the confrontation clause, those statements are still subject to a Rule 403 analysis. So even if the court does not deem those issues waived, they were properly excluded under Rule 403 because of the issues of confusing the jury. And really the probative value was substantially outweighed by the risk of unfair prejudice. Unless the court has additional questions on... I mean, you do still have a little more time. So I appreciate that you did brief it, and therefore we have full briefing on the issue. But what if Justin had walked out with the police officers and said, you know, could you remind her that perjury is a crime? Is there any way that the government would be arguing that the jury can't hear that as impeachment of Justin? No, Your Honor. That would be entirely appropriate. But to first argue it as impeachment, the witness has to make an inconsistent statement. But they did put Justin on, and you're not contesting that they had the right to do that under 607.  So he's an appropriate witness. And then when indirect, he becomes hostile and says her stories have been consistent. To the extent I talked about other stories, it was stuff on TV. At that point, wouldn't it be crucial for them to say, well, wait a minute, Justin, didn't you tell the police you should tell her that perjury is a crime? That would be devastating impeachment. But I don't see how it's different than this statement. I think it's distinguishable, Your Honor, because in the hypothetical that you posed, there would be conclusive evidence that he, in fact, did not think that she was a truthful person. And it calls into question her credibility, which is the crux of the government's case. The general question of, do you guys do polygraphs? You do focus on that, but then he followed up, am I wrong? You should probably do one. It's not, do you do polygraphs? It's, you should probably do one. That's correct, Your Honor, but he did explain that statement during the first trial. I know, but the government can't win by just excluding something that's difficult. If there's explanation for it, they need to explain it at the second trial. In other words, if there is equivalency between someone whispering to the police, you should probably do a polygraph, and someone whispering to the police, you should probably tell her that perjury is a crime. If those are functional equivalents, those are sort of gold for a defense attorney. And maybe the government can explain it to a jury, but I'm not understanding the theory of it hurts in the first trial, hung trial, so you get it excluded altogether in the second. No problem. Conviction seems to sort of point out, how could it be harmless? That's my anxiety in this case. Well, I think the distinction is it's the word polygraph, so to the extent that defense counsel before the district court wanted to question Zachary's view of the victim's credibility and the veracity of her story and what he believed that she was saying, he was entirely permitted to do that, and he did do that during his direct examination. The only thing that he was limited from doing was use of the word polygraph. And so, in that sense, the essence of the confrontation issue here was satisfied, and he was able to readily attack the credibility of all the witnesses that were important to his defense. Thank you. Unless the panel has any additional questions on that issue? Oh, are you moving to other issues? You're not sitting down. Okay, go ahead, and I'll, if you don't address what I want to ask about, I'll ask it. The next issue I was going to turn to, Your Honors, in light of what my counterpart discussed was the standard of review regarding the Bodie issue and the actual merits of the Rule 29 in both trials. So it is our view that the first trial evidence sufficiency is foreclosed under Richardson, and focusing specifically on the Bodie case that my counterpart cited. As he noted, that was a pre-Richardson case. It was a 1979 case, and it relied on Burks, which was also a pre-Richardson case. And in Bodie, the petitioner appealed the denial of a 2255, where he raised that the district court should have granted his Rule 29 motion during the first trial, thus requiring vacatur of the conviction following his retrial. And five years later, Richardson was decided, and that case and its progeny specifically restricted Burks' application to cases where an appellate court has found insufficient evidence. So it no longer applies if no court has made a finding of insufficient evidence. And that's discussed in the Gutierrez-Zamorano case that was cited in the government's brief. So as a result of those cases, and Richardson and its progeny, it's our view that Bodie really is not good law, and the court should not rely on it in declining to foreclose the sufficiency of the evidence review. I wanted to briefly turn to something that Judge Higginson pointed out regarding the victim's testimony in this case. And the court is entirely correct that just the victim's testimony alone was sufficient to sustain the verdict here and was sufficient to overcome the Rule 29 motions in both cases. The elements of aggravated sexual abuse and abuse of sexual contact that are at issue here were that Miguel used forced, threatened, or placed the victim in fear that she would be subjected to death or serious bodily injury to cause her to engage in a sexual act. And in all of her interviews, during all of her trial testimony, she consistently described being punched in the face, then Miguel climbing on top of her, choking her, and forcibly raping her. And she described being in fear for all of that. So regardless of quibbling over different ways that she described other details surrounding the attack, she was entirely consistent on the core elements of those two offenses. And so the government wins regardless of whether this court wants to reach the sufficiency, whether the sufficiency of the evidence is foreclosed in the first trial. Unless the court has any additional questions on the remaining issues. I have a question on the special conditions.  So what sentencing goals do the child-related special conditions promote? Because I'm looking at the district court decision, and it doesn't provide any reasoning for the conditions. And here, I can't see what in the record would support specifically the child-related special conditions. Several things, Your Honor. So the sex offender conditions, first of all, are in line with what defendants convicted of similar crimes receive. So this is obviously a sex offense. And Miguel raped a 17-year-old girl. And how old was Mr. Miguel? He was about 23 years old during the assault. Okay. So this case is different than sort of the child pornography types of cases that often, you know, is where you have the special conditions imposed. So how is this case similar to the line of cases that would typically support these special conditions? And doesn't the district court have to provide reasons to support the special conditions? They do, Your Honor, but that also can be inferred from the record as a whole. So in this case, the pre-sentence investigation report contained reasons below each of the two, where in the record you're looking for those, for that support? Yes, Your Honor. And specifically, I'm looking for things that would support defendants' continued sexual interest in children, which is the situation in Blinkenship, or other facts that would support a condition showing that this defendant is similar to a defendant, say, in a child pornography case. I will continue looking for the site while I answer the question, but the short version is that the reasons for those conditions are found in the pre-sentence investigation report at the back, where the probation officer proposed. Can you give me the site and then also tell me what are the specific supporting facts? I'm sorry, Your Honor, I don't have the site ready, so I'm happy to provide a supplemental filing with that information. No, I don't think they exist, I think, is the point that I'm trying to make. So unless you can tell me what the facts are or point me to a specific place in the record, I don't see that they exist in this case. Your Honor, I think that the specific facts in the record are the victim's age. So she's clearly under 18. And regardless of the closer in age gap than the court might see in child sex offense, specific conditions serve therapeutic goals in rehabilitation, and they're necessary to protect the community. And so that can be inferred from the pre-sentence investigation report as a whole, in addition to the district court's discussion, the government's discussion about how this impacted the victim's life. But if a defendant in particular had a clean criminal record and a history of volunteering with children, there was, in fact, not only is there not evidence in the record to suggest the kinds of things that you would have in a typical case where you're imposing these special conditions, but we have actual information that suggests the other. Right? The Court is correct that he had very minimal criminal history besides minor traffic. I see that I'm out of time. May I finish answering the Court's question? Besides other, like, minor traffic offenses. Which is not a criminal history, correct? That's correct. And I'm sorry, I lost my train of thought. Would the Court rephrase that question? The question is, here, not only is there nothing in the record to suggest that there are facts that are similar to, say, a child pornography case, but there are actual facts to suggest that he had a clean criminal history and also was volunteering with children and had sort of community involvement that would suggest that he's not, in fact, a danger. I think your comment that provoked my question is that this serves these therapeutic values to protect the community, but we have a defendant here who really doesn't fit that same pattern that you're talking about. Your Honor is correct about the underlying record for this particular defendant, but I think the context of this case and the violence of this assault proves otherwise. And regardless, this is a plain error review question because defense did not object to this below. And Well, can't you find that it's plain error if there's no justification and it doesn't really fit the facts of this case? Well, I think it does fit the facts of the case, Your Honor, because this is an aggravated sexual abuse and abusive sexual contact case where the victim was under the age of 18. And so in looking at the 3553A factors and similarly situated defendants, in this particular crime, the types of conditions that are regularly imposed for these types of defendants, the court imposed conditions that were entirely consistent. Okay. Thank you, Your Honors. Thank you. Yes. Briefly, Your Honors, on the 403 issue and whether we've waived that, I could have been clearer in my opening brief by citing the 403. I sort of danced around it. I thought I had implicitly made the argument. The government in turn interpreted our polygraph issue in the first, in my opening brief, to be both a constitutional and 403 argument and did respond to it. And in my reply brief, I'll just quote real quickly, even if the error here did not rise to the level of a Confrontation Clause violation, this Court may find reversible error based on the District Court's prejudicial misapplication of the Federal Rules of Evidence, specifically Rules 402, 403, and 801. With respect to the sexual offender terms, the Court's probably aware Mr. McGill's age at the time of the alleged offense is in the PSR. He was 22 years old. Ms. Hugo was what I would describe as obviously a young woman, not yet aged majority, but she was a sexually mature young woman. She wasn't a child. He wasn't 40 years old. And we just think there's nothing in the record that was presented to the District Court that would have justified some of those sex offender terms. Thank you, counsel. I see your time is up. We appreciate the argument of both counsel. This matter will stand submitted.
judges: Higginson, MENDOZA, DESAI